IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRANDY A. READ, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) )  Case No. 21-CV-316-JFJ ) |
| OKLAHOMA FLINTROCK PRODUCTS, LLP, | ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court is Defendant Oklahoma Flintrock Products, LLP's Amended Motion for Summary Judgment (ECF No. 42). This case involves an employee allegedly being sexually harassed by her supervisor and retaliated against by company management after bringing the harassment to management's attention. After consideration of the summary judgment record, the Court finds genuine issues of material fact exist on Plaintiff's claims.

**I.      Facts in Summary Judgment Record**

Plaintiff Brandy A. Read ("Read") alleges violations of Title VII of the Civil Rights Act of 1964 for hostile work environment sex discrimination and retaliation by defendant Oklahoma Flintrock Products, LLP ("Flintrock"), her former employer. First Am. Compl. (ECF No. 13).

**A.      Hostile Work Environment Sex Discrimination**

Flintrock hired Read as an office assistant on or about January 9, 2019. ECF No. 42 at 2 (Flintrock Undisputed Fact No. 1). In her role as an office assistant, Read reported directly to Office Manager Ashley Phipps ("Phipps"). *Id.* at 2 (Flintrock Undisputed Fact No. 3). Shortly after hiring Read, Flintrock hired Harry Singh ("Singh") as its Chief Operating Officer. *Id.* at 2 (Flintrock Undisputed Fact No. 7). Singh had supervisory authority over all employees at

Flintrock's Oklahoma facility, including Read. ECF No. 45-1 (Flintrock "Chain of Command" chart).

Read initially enjoyed her job as an office assistant. ECF No. 42-14 (Brandy Read Deposition) ("Read Dep.") at 29:9-15. However, Read claims Singh began sexually harassing her almost immediately after his arrival. *Id.* at 31:24-32:1. Specifically, Singh began repeatedly calling Read his "American wife," "baby," and "sexy petite thing," and asked Read to go dancing with him. *Id.* at 34:4-11. He asked Read to find him a masseuse, and when Read replied that she would find one on the computer, Singh responded that she could "rub [him] down real good" instead. *Id.* at 34:9-15. Read testified Singh's harassing comments made her "uncomfortable." *Id.* at 36:5-11. On another occasion shortly after his arrival, Singh told Read she could get an expected pay raise if she would spend the night with him. *Id.* at 106:13-17, 156:8-157:10.

Read testified this harassment went on for approximately one month before she formally reported it. Read Dep. at 34:18-23. Read believed that Phipps, supervisor Rocky Ferdig ("Ferdig"), and her mother Karri Read ("Karri"), who also worked at Flintrock, had witnessed at least some of Singh's harassing comments. *Id.* at 35:15-36:15, 38:10-23. At the time of her deposition, Phipps could not remember whether she witnessed Singh refer to Read as "baby." Phipps Dep. at 121:3-5. Karri testified that Singh told her Read would be his "American wife" on multiple occasions. ECF No. 42-15 (Karri Read Deposition) ("Karri Dep.") at 24:5-15. She initially thought it was a joke, but it became irritating after he repeated it so many times. *Id.*

Read testified she told supervisor Michael Polk ("Polk") that Singh had asked her to go out dancing with him, which made her uncomfortable. *Id.* at 37:8-16. At the time of his deposition, Polk did not recall Read expressing concerns to him about Singh's harassing behavior. ECF No. 42-11 (Michael Polk Deposition) ("Polk Dep.") at 29:9-25. Polk testified he had never heard or

2

witnessed Singh engage in harassing behavior toward women or treat women any differently at Flintrock. *Id.* at 59:7-60:21, 78:16-18.

Read formally complained about Singh's sexual harassment to Phipps on February 14, 2019. ECF No. 42-13 ("Phipps Report"), at 2. Read initially emailed Phipps about Singh's behavior and then spoke to Phipps about the harassment. Read Dep. at 36:16-21. Read told Phipps that Singh had made harassing comments to her and asked her to go dancing with him. *Id.* at 39:6-10. Phipps said that "she would handle it." *Id.* at 39:20.

Phipps prepared an investigation report, which she signed and dated February 15, 2019. Phipps Report at 5. In the report, Phipps stated that Read reported the "incident" to her on February 14, 2019. *Id.* at 2.[1] Phipps stated she "ha[d] not witnessed inappropriate behavior between Harry and Brandy," there were no witnesses to the accusations, and she "found no evidence to support the allegation." *Id.* at 2-3. After interviewing Singh, Phipps concluded that she "honestly believe[d] [Read] modified [Singh's] words to work in her favor." *Id.* Phipps recommended no action was needed. *Id.*

Read testified that Phipps did not report her investigation findings to her, and she had to follow up with Phipps about her complaint. Read Dep. at 40:1-7. Phipps responded that she had talked to Flintrock's female CEO Sinni Singh ("Sinni"),[2] it was "handled," and "[i]t won't happen again." *Id.* at 40:7-9. Even after Read complained to Phipps, however, Singh allegedly grabbed Read's hips and shoulders. *Id.* at 105:7-13, 107:24-108:8.

---

[1] The Phipps Report appears to be missing at least one page. Page two begins with no header and an incomplete sentence: "during morning meetings." The report also contains no description of the alleged "incident" Read disclosed to Phipps on February 14.

[2] During the hearing, Flintrock's counsel clarified that Sinni Singh and Harry Singh are not related.

3

**B.     Retaliation**

Within a week of her second conversation with Phipps regarding the harassment, Read was moved to a different role at Flintrock, into sales. Read Dep. at 29:22-24, 40:17-21. Phipps testified that the reassignment was unrelated to Read's complaint about Singh. Phipps Dep. at 37:8-38:3. After the move, Read's direct supervisor was Polk, but Read was told to report to Singh when Polk was not available. Read Dep. at 129:16-130:4. Read testified that Singh regularly became angry at her, yelled at her in meetings, and called her "dumb." *Id.* at 42:11-25, 45:4-7, 47:1-10, 108:25-109:7. Read stated Polk tried to help her handle the situation by giving her sales projections to take home with her. *Id.* at 43:15-25.

On March 14, 2019, approximately two months after her hiring date, Read was called into a meeting with Ferdig, Polk, Phipps, and Karri, with Sinni attending remotely. Read Dep. at 47:23-48:8. Flintrock management informed Read they were aware she had contacted a lawyer about the harassment, and they asked her to identify the lawyer. *Id.* at 48:9-21. After the meeting, Read went to her office, where she discovered her work computer and telephone were locked. *Id.* at 50:22-25. Read was told she was not allowed to work while they were figuring out "what to do with [her], whether [she] was going to get fired or not." *Id.* at 51:1-6.

Later that day, Read put some paperwork in her bag and prepared to leave, when Polk approached her desk and asked what was in her bag. *Id.* at 52:22-53:5. Polk took her bag, pulled out the paperwork, and returned to the conference room. *Id.* at 53:7-10. Read was then called to the conference room and informed she was fired for stealing company paperwork. *Id.* at 53:11-14. Read testified that Polk had previously advised her to take this same paperwork home to study it. *Id.* at 53:14-18. Read was terminated by Flintrock this date. ECF No. 42 at 2 (Flintrock Undisputed Fact No. 5).

On the day Read was fired, Polk prepared and signed a report memorializing the events surrounding her termination ("Polk Report"). Polk Dep. at 46:11-15; ECF No. 8 (Polk Report). The Polk Report stated that, at approximately 4:00 pm, he received a call from Sinni to go to Read's desk, as the camera in the office showed Read removing company files from her desk and placing them in her purse. Polk Report. Polk approached Read about the company documents, and she replied that she was removing only divorce papers and personal items. *Id.* Polk asked Read to remove the items from her purse, and Read pulled out various company documents. *Id.* Polk then went to the conference room, where he informed Phipps and Ferdig of his findings and showed them the folder removed from Read's purse. *Id.* Then, in conference with Sinni, "the decision was made" to terminate Read's employment. *Id.* Read was then called into the office at approximately 4:30 p.m., and Ferdig informed her that her employment was terminated "for the above reasons." *Id.*[3] Phipps also recalled that Read was terminated for having company documents in her purse. Phipps Dep. at 56:17-23.

C. **Alleged Work Performance Issues**

Flintrock alleges Read had numerous other work performance issues throughout her tenure at Flintrock. Flintrock's CEO Sinni states in an affidavit that Read's employment issues included "continually missing or being late for work, falling asleep in the office, using her cell phone for personal use, distracting other employees, being unprepared at meetings, and having company documents in her purse." ECF No. 48-1 (Affidavit of Sinni Singh, dated October 31, 2022) at ¶ 3.

Read disputes the majority of these accusations. *See* Read Dep. at 23:11-25:8, 69:15- 72:21, 110:6-111:5, 113:22-114:8. Read also testified she took Flintrock paperwork home only when Polk or Phipps told her to take it home. *Id.* at 73:4-9, 73:16-19, 76:7-14. Polk testified he could

---

[3] As explained below, the Polk Report appears to be missing pages and attachments.

not recall if he had ever authorized Read to take company documents home to study, although he testified there were certain documents listed in the Polk Report that he would not have asked Read to study. Polk Dep. at 51:20-52:23. Polk further testified he had no concerns about Read's job performance during the time he trained her in sales, and he was not taking any steps to have Read fired prior to her termination date. Polk Dep. at 39:25-40:21.

### D.   Claims Asserted in Lawsuit

Read filed this lawsuit on August 5, 2021. Read asserts two causes of action against Flintrock for violation of Title VII of the Civil Rights Act of 1964 ("Title VII"): (1) hostile work environment sex discrimination; and (2) retaliation for engagement in protected activity within the meaning of Title VII. ECF No. 13. Flintrock seeks summary judgment on all claims against it. On November 2, 2022, the Court held a hearing on the summary judgment motion and heard argument from both parties.

## II.   Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* As the court makes this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

A party opposing a motion for summary judgment may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c); *see*

*Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 (10th Cir. 1994) ("Even though all doubts must be resolved in [the non-movant's] favor, allegations alone will not defeat summary judgment.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (citations omitted). The inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### III. Title VII Hostile Work Environment Sexual Harassment (Claim 1)

Under Title VII, an employer is prohibited from discriminating against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's sex. 42 U.S.C. § 2000e-2(a)(1). "Title VII's prohibition of employment discrimination based on sex encompasses hostile work environment sexual harassment." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998).

To establish a sexually hostile work environment claim, a plaintiff must prove: (1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment. *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007) (citing *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1262 (10th Cir. 2005)). In addition to satisfying these four elements, the plaintiff must also identify which theory of liability she is using to hold her employer liable under Title VII – direct liability for co-worker harassment, or vicarious liability for

supervisor harassment. *See Vance v. Ball State Univ.*, 570 U.S. 421, 427-28 (2013). Here, Read seeks to hold Flintrock vicariously liable for Singh's harassment, based on the allegation that Singh was her supervisor.

Flintrock challenges the third and fourth elements. Flintrock also argues it cannot be held liable for Singh's harassment, relying on the Tenth Circuit's decision in *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664 (10th Cir. 1998).

### A. Harassment Based on Sex

Flintrock contends no reasonable juror could find that the alleged harassment was based on Read's sex. As to this element, the plaintiff "must produce evidence that she was the object of harassment because of her gender." *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998). "Courts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity; it is reasonable to assume those proposals would not have been made to someone of the same sex." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).

A reasonable jury could draw the inference that Singh's harassment of Read was based on her sex. Singh called Read pet names, including "American wife," "baby," and "sexy petite thing." He asked her to go out with him, to give him a massage, and to spend the night with him. These comments are overtly sexual in nature and are sufficient to create an inference of discrimination based on sex.

### B. Severe or Pervasive Harassment Creating Abusive Work Environment

This element requires the plaintiff to show "that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently

8

severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Penry*, 155 F.3d at 1261 (quotation omitted).  The Tenth Circuit has noted that "the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is quintessentially a question of fact."  *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999) (quotation omitted).

To evaluate whether a working environment is sufficiently "hostile" or "abusive," a court reviewing a summary judgment motion must examine "all the circumstances," including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with the employee's work performance.  *Harris v. Forklift Sys., Inc.* 510 U.S. 17, 23 (1993).  Under this standard, a plaintiff must show "the environment was both objectively and subjectively hostile or abusive."  *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998).

Flintrock argues that it is entitled to summary judgment on this element because Read's testimony that she suffered severe or pervasive harassment is unsubstantiated and self-serving. Specifically, Flintrock cites testimony of other Flintrock employees who testified they did not witness the harassment.  This was Flintrock's counsel's primary focus during oral argument.

This argument regarding a lack of corroboration of Plaintiff's testimony is unavailing at the summary judgment stage.  Sexual harassment often happens in private and need not be witnessed by others in order for a plaintiff to reach a jury on her claims.  *See Henderson v. Whirlpool Corp.*, 17 F. Supp. 2d 1238, 1243 (N.D. Okla. 1998) (finding disputed issue of material fact on issue of "severe or pervasive" harassment, where there were no witnesses to alleged incidents, and determination of events depended largely on credibility of plaintiff and alleged harasser).  The Court will not make credibility determinations or weigh Read's testimony against

other witnesses' testimony at the summary judgment stage. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). Further, Read's testimony is based on her own personal knowledge of what occurred; is supported by a contemporaneous complaint consistent with her claims in this lawsuit; and is supported by Karri's testimony that Singh repeatedly told her Read would be his "American wife." Contrary to Flintrock's argument, Read's testimony constitutes more than "unsubstantiated allegations" and is based on "more than mere speculation, conjecture or surmise." *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1098 (10th Cir. 2019). Although other Flintrock employees do not recall witnessing the harassment, this does not entitle Flintrock to summary judgment. *See Greer v. City of Wichita*, 942 F.3d 1320, 1325 (10th Cir. 2019) (finding that plaintiff's "self-serving" testimony, even standing alone, "can suffice to prevent summary judgment").

      The Court is also satisfied that a rational jury could find Singh's conduct, as described by Read, sufficiently severe or pervasive to create an objectively and subjectively hostile work environment. As to the objective inquiry, Singh directed unwelcome sexual comments toward Read on multiple occasions over a period of approximately one month, including calling Read pet names and asking Read to massage him, go out with him, and spend the night with him. Singh also subjected Read to unwelcome touching, such as grabbing her shoulders and hips. This is sufficient to reach a jury. *See Cadena v. Pacesetter Corp.*, 18 F. Supp. 2d 1220, 1228 (D. Kan. 1998) (finding triable issue on whether harassment was objectively hostile or abusive, where plaintiff pointed to a number of sexually suggestive or sexually demeaning remarks made by supervisor, at least two of which were repeated on numerous occasions, over a period spanning two to three months).

As to the subjective inquiry, it is not required that the abusive work environment seriously affect the plaintiff's psychological well-being, tangibly impair her work performance, or make her quit or want to quit her employment. *Davis*, 142 F.3d at 1341. "The criterion is not what a reasonable woman employee is capable of enduring, but whether the offensive acts alter the conditions of employment." *Id.* (quotation omitted). Here, Read testified she enjoyed her office assistant job before Singh's harassment began. She testified Singh's comments made her uncomfortable. Read was sufficiently bothered by Singh's comments and behavior that she formally reported it to Phipps. Read then followed up shortly thereafter because Singh's conduct was continuing, and Phipps had not reported back to her. This is sufficient to reach a jury. *See Davis*, 142 F.3d at 1342 (finding plaintiff's testimony that harasser's actions made her feel "terrible" and "more and more stressed out and pretty cracked," and that she "hated" the behavior, was "pretty shocked," and just "wanted to avoid the whole situation," sufficient to reach a jury on whether she subjectively perceived a hostile work environment).[4]

### C. Employer Liability for Supervisor Harassment

Flintrock contends that, regardless of any actionable sexual harassment, Flintrock is entitled to summary judgment because it took sufficient action to remedy and prevent further harassment against Read. Specifically, Flintrock argues Phipps investigated and adequately responded to the harassment. In support of this defense, Flintrock relies on *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664 (10th Cir. 1998). The Tenth Circuit explained in *Adler* that, in the instance of *co-worker* sexual harassment, the plaintiff must establish that the employer had actual

---

[4] Flintrock did not make any clear arguments regarding the lack of a triable question on the severity or pervasiveness of Singh's conduct, other than to challenge Read's veracity. Nor did it cite cases with similar facts that would support a finding of summary judgment on this element. The Court accepts Read's arguments and finds a triable question of fact.

11

or constructive knowledge of the hostile work environment but failed to adequately respond to notice of the harassment. *Id.* at 673. The basis for this "direct liability" is that the employer was negligent in allowing co-workers to engage in sexual harassment, by failing to remedy or prevent harassment of which it was actually or constructively aware. *Id.*

Flintrock's reliance on *Adler* is misplaced, because this case involves supervisor harassment, rather than co-worker harassment. It is not disputed that Singh was Read's "supervisor" for Title VII purposes.[5] When the alleged harasser is the plaintiff's supervisor, different legal standards apply. *Vance*, 570 U.S. at 428. *See Payne v. Great Plains Coca-Cola Bottling Co.*, 348 F. Supp. 3d 1194, 1200 (N.D. Okla. 2018) (explaining that "[t]he applicable theory of liability for [hostile workplace] harassment depends on the status of the harasser" as co-worker or supervisor). Where the alleged harasser is a supervisor, the employer may be held "*vicariously* liable for its employees' creation of a hostile work environment." *Vance*, 570 U.S. at 428.

The Supreme Court has identified two situations in which an employer may be held vicariously liable for supervisor harassment. *Id.* at 428-29. First, "[i]f the supervisor's harassment culminates in a 'tangible employment action,' the employer is strictly liable for sex discrimination, with no defense." *Kramer v. Wasatch Cnty. Sheriff's Office*, 743 F.3d 726, 737 (10th Cir. 2014) (quoting *Ellerth*, 524 U.S. at 762-63). Second, if no tangible employment action occurs, the employer may still be held liable if the supervisor's harassment was "severe or pervasive," and the

---

[5] Under Title VII, a "supervisor" is an employee whom the employer has empowered "to take tangible employment actions against the victim, *i.e.,* to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Vance*, 570 U.S. at 431 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Flintrock's counsel conceded at the hearing that Singh was Read's supervisor.

12

employer is unable to establish the *Faragher-Ellerth* affirmative defense. *Id. See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Ellerth*, 524 U.S. at 765. Under this affirmative defense, an employer may avoid liability by showing (1) that it "exercised reasonable care to prevent and promptly correct any sexually harassing behavior" and (2) that the plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Debord v. Mercy Health Sys. of Kansas, Inc.*, 737 F.3d 642, 653 (10th Cir. 2013) (quotation omitted).

Read's evidence is sufficient to survive summary judgment on both types of supervisor liability. First, a reasonable jury could find Flintrock strictly liable based on Singh's tangible employment action of offering Read an expected pay raise if she would spend the night with him and failing to give her that raise when she refused. *See* Read Dep. at 106:16-17 ("[Singh] stated that I could get my pay raise if I would spend the night with him."). Denial of a pay raise could fall within the realm of a tangible employment action. *See Ellerth*, 524 U.S. at 761 ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

Second, a reasonable jury could find Flintrock vicariously liable based on Singh's conduct that did not rise to the level of a tangible employment action. As explained above, Read has raised a triable question as to whether Singh engaged in actionable sexual harassment. As discussed at the summary judgment hearing, Flintrock failed to raise the *Faragher-Ellerth* affirmative defense and relied exclusively on the *Adler* line of decisions, which does not apply to claims of supervisor harassment.

Flintrock's motion for summary judgment as to the hostile work environment sexual harassment claim is denied.

## IV.     Title VII Retaliation (Claim 2)

It is an unlawful employment practice under Title VII "for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). A plaintiff may prove a Title VII claim in one of two ways: through direct evidence, or through circumstantial evidence by use of the *McDonnell Douglas* burden-shifting test. *Ward v. Jewell*, 772 F.3d 1199, 1202 (10th Cir. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

Under the *McDonnell Douglas* framework, the plaintiff bears the burden of proving a prima facie case of retaliation by a preponderance of the evidence. *Id.* The plaintiff establishes a prima facie case by showing (1) she engaged in protected opposition to discrimination, (2) she suffered an adverse employment action, and (3) a causal connection existed between the protected activity and the adverse employment action. *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1212 (10th Cir. 2003). Once the plaintiff makes a prima facie showing, the employer must articulate a "legitimate, nondiscriminatory reason for the adverse employment action." *Id.* (quotation omitted). The plaintiff must then respond by demonstrating that the employer's asserted reasons for the adverse action are "pretextual." *Id.* (quotation omitted).

Flintrock argues Read cannot satisfy the first or third elements of her prima facie case. Flintrock additionally asserts a legitimate, nondiscriminatory reason for Read's termination and argues Read cannot overcome that reason with evidence of pretext.[6]

### A.    Protected Opposition to Discrimination

Flintrock contends Read did not engage in protected activity, because there was no actionable sexual harassment by Singh. However, to establish this prong of the test, a plaintiff "is not required to show that she reported an actual violation of Title VII," as long as plaintiff demonstrates a "reasonable good-faith belief that she was opposing discrimination." *New v. Bd. of Cnty. Comm'rs for Tulsa Cnty.*, 434 F. Supp. 3d 1219, 1226 (N.D. Okla. 2020) (quoting *Fassbender v. Correct Care Solutions, LLC*, 890 F.3d 875, 890 (10th Cir. 2018)) (quotation marks omitted). Read formally reported Singh's sexual harassment to Phipps, and there is no evidence suggesting Read lacked a reasonable good-faith belief that she was being sexually harassed.

### B.    Causal Connection

Flintrock also contends there was no causal connection between her report of Singh's harassment and the adverse employment action of Read's termination. However, a plaintiff may establish a prima facie case of causation when an adverse action follows the protected activity very closely in time. *Meiners v. Univ. of Kansas*, 359 F.3d 1222, 1231 (10th Cir. 2004). The Tenth Circuit has found a six-week period between protected activity and adverse action may be sufficient, standing alone, to survive summary judgment on the issue of causation, whereas a three-month period, standing alone, is insufficient. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). Read reported Singh's harassment on February 14, 2019. She was then

---

[6] Flintrock's motion for summary judgment focuses exclusively on Read's termination as the relevant retaliatory action. The Court therefore addresses only the termination and does not address any other potentially retaliatory events.

15

terminated on March 14, 2019, only four weeks after her complaint. These facts are sufficient, standing alone, to create a triable issue as to whether the protected opposition to discrimination caused her ultimate termination.

### C. Legitimate, Nondiscriminatory Reason for Termination / Pretext

In the summary judgment briefing, Flintrock asserts it had a legitimate, nondiscriminatory reason for firing Read – namely, Read "had performed poorly and broke company rules." ECF No. 48-1 (Affidavit of Sinni Singh) at ¶ 2. Sinni states in an affidavit that Read's employment issues included "continually missing or being late for work, falling asleep in the office, using her cell phone for personal use, distracting other employees, being unprepared at meetings, and having company documents in her purse." *Id.* at ¶ 3.

Read contends Flintrock's asserted reasons for her termination are a pretext for retaliation. To show pretext, the plaintiff must produce evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006) (cleaned up). Inconsistent reasons provided for the termination can be evidence of pretext. *Whittington v. Nordam Grp., Inc.*, 429 F.3d 986, 994 (10th Cir. 2005). *See Plotke v. White*, 405 F.3d 1092, 1104 (10th Cir. 2005) (explaining that "conflicting evidence regarding the reasons [the employer] decided to fire [plaintiff] raise[s] credibility issues for the fact finder" regarding pretext).

Read has presented sufficient "pretext" evidence to reach a jury on her retaliation claim. First, Flintrock has provided inconsistent explanations for the termination. On the date of termination, Flintrock gave Read a single reason for firing her – that she was stealing company

16

documents. *See* Polk Report. *See also* Phipps Dep. at 56:17-23 (Phipps testified she recalled that Read was terminated for having company documents in her purse); Read Dep. at 148:13-15 (Read testified, "I believe Rocky Ferdig and Ashley Phipps notified me of my employment termination and that they believed I was stealing company property"). By contrast, Flintrock now asserts in litigation that Read also had numerous performance issues throughout her tenure at Flintrock, which contributed to the termination decision. *See* ECF No. 48-1 (Affidavit of Sinni Singh) at ¶¶ 2-3. These performance issues were not raised at the time of termination or mentioned in the Polk Report, and these inconsistent explanations for Read's termination could support a finding of pretext.

Second, the only contemporaneous document summarizing the reasons for termination – the Polk Report – is incomplete. *See* ECF No. 42-8. The document begins with the phrase, "At approximately 4:00 pm the same day," which suggests that page one is missing. The Polk Report also states that the removed company documents are "attached as evidence," but no documents are actually attached. Flintrock's failure to provide complete documentation supporting its stated reason for termination also support a finding of pretext.

Finally, Read's termination occurred the same day that Flintrock management confronted her about hiring a lawyer related to her harassment complaints. Read was told to do nothing all day while they decided whether they would fire her. Read was then fired for stealing company documents, which happened to occur on the same day that management was considering her termination. Read testified that she had not, in fact, stolen company documents but had been told by Polk and Phipps to take company documents home to study them. Viewed favorably to Read, this sequence of events could also support a finding of pretext.

17

In sum, a jury could disbelieve Flintrock's asserted reasons for firing Read. Combined with the elements of the prima facie case, this would permit the jury to reasonably infer that Flintrock would not have fired Read "but for" her engagement in protected activity. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (holding that Title VII retaliation claims must be proved according to traditional principles of but-for causation, which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer").

Flintrock's motion for summary judgment on the retaliation claim is denied.[7]

## V. Conclusion

For the reasons detailed above, Defendant Oklahoma Flintrock Products, LLP's Amended Motion for Summary Judgment (ECF No. 42) is **DENIED** in its entirety. Pursuant to the Court's Order extending the dispositive motion deadline (ECF Nos. 40, 41), Oklahoma Flintrock Products, LLP's Motion for Summary Judgment (ECF No. 38) is **DENIED AS MOOT**.

**SO ORDERED** this 2nd day of December, 2022.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**

---

[7] In its opening brief, Flintrock argues that it may reduce its liability exposure for retaliation under a "mixed motive" theory of liability. At the hearing, Flintrock's counsel conceded that the United States Supreme Court has eliminated this approach to Title VII retaliation claims. *See Nassar*, 570 U.S. at 362 ("The text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."). Given this concession, the Court will not further address the mixed motive theory.