IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRANDY A. READ, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) )   Case No. 21-CV-316-JFJ ) |
| OKLAHOMA FLINTROCK PRODUCTS, LLP, | ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

Before the Court is Defendant Oklahoma Flintrock Products, LLP's Motion for Remittitur (ECF No. 81).

**I.   Background**

This Court held a jury trial on Plaintiff Brandy A. Read's ("Read") claims against defendant Oklahoma Flintrock Products, LLP ("Flintrock") on January 23 and 24, 2023. The jury returned a verdict in Read's favor on her claim of hostile work environment sex discrimination in violation of Title VII of the Civil Rights Act of 1964. The jury awarded Read $1,440.00 in compensatory damages and $15,000.00 in punitive damages, for a total of $16,440.00. *See* ECF No. 78 (jury verdict); ECF No. 79 (judgment). The jury found in Flintrock's favor on Read's claims of Title VII pre-termination retaliation and Title VII retaliatory termination. ECF No. 78 at 2-3.

Flintrock claims that the punitive damage award of $15,000 is excessive, because there were no aggravating factors presented at trial regarding its conduct that would warrant such a high award. Flintrock further argues the ratio of compensatory damages to punitive damages is excessive and violates its constitutional due process rights.

**II.     Standard of Review**

"It is a fundamental legal principle that the determination of the quantum of damages in civil cases is a fact-finder's function." *Bennett v. Longacre,* 774 F.2d 1024, 1028 (10th Cir.1985). The jury, which had the first-hand opportunity "to hear the testimony and to observe the demeanor of the witnesses, is clothed with a wide latitude and discretion in fixing damages, pursuant to the court's instructions, deemed proper to fairly compensate the injured party." *Id.*  Therefore, remittitur, "which permits a court to reduce a damages award, is rarely appropriate." *Stockmar v. Colorado Sch. of Traditional Chinese Med., Inc.*, No. 13-CV-02906-CMA-MJW, 2015 WL 3568132, at *1 (D. Colo. June 8, 2015).

In reviewing a motion for remittitur, "the Court must view all facts in the light most favorable to the prevailing party." *Id.* at *3 (citing *Patton v. TIC United Corp.*, 77 F.3d 1235, 1242 (10th Cir. 1996)).  The Court should not order a remittitur "when the size of the verdict turns upon conflicting evidence and the credibility of witnesses." *Id.* (citing *Palmer v. City of Monticello,* 31 F.3d 1499, 1508 (10th Cir.1994)).  On a motion for remittitur, "the jury's verdict is inviolate" unless the Court finds it "so excessive that it shocks the judicial conscience and raises an irresistible inference that passion, prejudice, corruption, or other improper cause invaded the trial." *M.D. Mark, Inc. v. Kerr-McGee Corp.,* 565 F.3d 753, 766 (10th Cir. 2009) (quotation omitted). *See also State Office Sys., Inc. v. Olivetti Corp. of Am.*, 762 F.2d 843, 847 (10th Cir. 1985) ("The fixing of damages is 'peculiarly a function of the jury' and its determination will not be overturned unless it is 'grossly excessive.'").  A verdict on damages may be "supported by any competent evidence tending to sustain it." *Bennett*, 774 F.2d at 1028 (citing *Hitchcock v. Weddle*, 304 F.2d 735, 737 (10th Cir. 1962)). "The question of the excessiveness of the verdict is a matter addressed to the sound discretion of the trial court." *State Office Sys.*, 762 F.2d at 847 (quotation omitted).

In reviewing the reasonableness of a punitive damages award, the Court considers three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 418 (2003). "Additionally, in analyzing a punitive damages award for excessiveness, [the Court] must consider the goal of deterrence." *Deters v. Equifax Credit Info. Servs., Inc.,* 202 F.3d 1262, 1272 (10th Cir. 2000) (citing *Continental Trend Resources Inc. v. OXY USA Inc.*, 101 F.3d 634, 636 (10th Cir. 1996)). "Only when an award can fairly be categorized as 'grossly excessive' . . . does it enter the zone of arbitrariness that violates the Due Process Clause of the Fourteenth Amendment." *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 568 (1996).

The "degree of reprehensibility" guidepost is "[p]erhaps the most important indicium of the reasonableness of a punitive damages award." *BMW*, 517 U.S. at 575. In evaluating reprehensibility, "courts generally consider the financial vulnerability of the plaintiff, whether the harm was physical as opposed to economic, whether the defendant acted with indifference or a reckless disregard for the health and safety of others, and whether the harm was the result of intentional malice, trickery or deceit." *Stockmar*, 2015 WL 3568132, at *4 (citing *State Farm,* 538 U.S. at 419).

**III.    Analysis**

Flintrock argues it is entitled to remittitur, because the jury's punitive damages award was excessive enough to violate Flintrock's constitutional due process right. *See Gore,* 517 U.S. at 568. Flintrock first contends its conduct was not reprehensible, because Flintrock demonstrated at trial that it had an employment policy against sexual harassment and demonstrated how the

policy was followed by a manager in conducting a confidential investigation and attempting to remedy the situation. Flintrock argues there was no evidence of any false statements, acts of affirmative misconduct, or improper motive.

The Court rejects this argument. Flintrock overlooks Flintrock's actual response to Read's complaint of sexual harassment and Flintrock's incomplete documentary evidence regarding its investigation. Read testified she was subjected to repeated unwelcome sexual comments and sexual touching over a period of several weeks by her supervisor, Harry Singh. ECF No. 87 (jury trial transcript vol. I) at 59:15-60:4, 61:18-62:4, 66:2-5, 66:25-67:5. After Read reported the harassment to Flintrock's office manager, Ashley Phipps, Ms. Phipps' investigation consisted of interviewing only Mr. Singh. *See* ECF No. 88 (jury trial transcript vol. II) at 241:11-22. Ms. Phipps noted in her report that Mr. Singh stated he was only "joking and having light conversation." *Id.* at 242:2-7. Just one day later, Ms. Phipps concluded that no further action was needed, noting that Read had not mentioned it again. *Id.* at 242:12-243:5.

The report offered into evidence at trial regarding Ms. Phipps' findings and investigation appeared to be incomplete and missing critical pages, including any description of Read's harassment allegations. *Id.* at 238:11-240:6. Other sections of the report appeared to be intentionally whited out. *Id.* at 240:7-241:10. Ms. Phipps testified that she could not explain the missing or whited-out content, and she did not know what had been covered or removed. *Id.* at 238:11-241:10. Further, Read testified that Mr. Singh's harassment did not stop even after she reported it to Ms. Phipps. *See* ECF No. 87 at 65:20-66:11. Read testified she went back to Ms. Phipps approximately one week after her initial report, and Ms. Phipps said "it was handled," even though the harassment by Mr. Singh was ongoing at that point. *Id.* at 66:12-22.

4

This evidence presented at trial was sufficient to support a jury's finding of reprehensible conduct by Flintrock, which would support a punitive damage award. The trial evidence would support a jury finding that Ms. Phipps' investigation of Read's complaint was a sham, that Flintrock attempted to cover up Mr. Singh's misconduct and minimize Read's complaint by removing critical pages and redacting the investigation report, and that Flintrock demonstrated a reckless disregard for Read's safety and emotional health by permitting the harassment to continue after Read reported it. Based on the trial evidence, which the Court views in the light most favorable to Read, the jury's $15,000 punitive damage award was supported.

Flintrock further contends that the punitive damage award is excessive, because the ratio of compensatory to punitive damages exceeds 1:10. Flintrock points out that the Supreme Court has noted that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm*, 538 U.S. at 425. However, the Supreme Court also declined to "impose a bright-line ratio which a punitive damages award cannot exceed." *Id. See id.* at 424-425 (explaining the Court has "consistently rejected the notion that the constitutional line is marked by a simple mathematical formula") (cleaned up). In *BMW*, the Supreme Court also explained that, while a ratio exceeding 1:10 might be suspicious, a low award of compensatory damages may properly support a higher ratio to punitive damage "if, for example, a particularly egregious act has resulted in only a small amount of economic damages" or where "the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine." *BMW*, 517 U.S. at 582.

The Tenth Circuit has also acknowledged that in a Title VII sexual harassment case, "where the injury is primarily personal, a greater ratio may be appropriate." *Deters v. Equifax Credit Information Servs., Inc.*, 202 F.3d 1262, 1273 (10th Cir. 2000). As the court in *Deters* noted,

punitive damages may be available for sexual harassment under Title VII, "even in the total absence of compensatory damages." *Id.* (citing *Timm v. Progressive Steel Treating, Inc.*, 137 F.3d 1008, 1010 (7th Cir. 1998)). "Indeed, 'there are no rigid benchmarks that a punitive damages award may not surpass.'" *BNSF R. Co. v. U.S. Dep't of Lab.*, 816 F.3d 628, 644-45 (10th Cir. 2016) (quoting *Haberman v. The Hartford Ins. Grp.,* 443 F.3d 1257, 1272 (10th Cir.2006)).

Here, the Court is not persuaded that the ratio between compensatory and punitive damages, which slightly exceeds 1:10, is unconstitutionally disproportionate. For reasons explained above, the jury had sufficient evidence to find that Flintrock's conduct in response to the report of harassment was "particularly egregious," even though Read suffered only a small amount of economic damages flowing from Singh's sexual harassment. *See State Farm*, 538 U.S. at 425; *Haberman*, 443 F.3d at 1272 (upholding punitive-to-compensatory damage ratio of 20:1, where jury had sufficient evidence supporting egregiousness of defendant's misconduct, and compensatory damage award was small).

## IV. Conclusion

For the reasons detailed above, Defendant Oklahoma Flintrock Products, LLP's Motion for Remittitur (ECF No. 81) is **DENIED**, and the punitive damages award of $15,000.00 is not "so excessive that it shocks the judicial conscience." *M.D. Mark*, 565 F.3d at 766.

**SO ORDERED** this 17th day of May, 2023.

JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT