IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **BRANDY A. READ,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) Case No. 21-CV-316-JFJ |
| v. | ) |
| | ) |
| **OKLAHOMA FLINTROCK** | ) |
| **PRODUCTS, LLP,** | ) |
| | ) |
| **Defendant.** | ) |

**OPINION AND ORDER**

Before the Court is Plaintiff Brandy A. Read's Motion for Award of Attorney Fees (ECF No. 82). Also before the Court is Defendant Oklahoma Flintrock Products, LLP's Counter-Motion for Attorney Fees (ECF No. 91). For the reasons explained below, the Court **GRANTS IN PART** Plaintiff's motion in the amount of $59,511.94 in attorney's fees. The Court **DENIES** Defendant's motion.

**I.      Background**

This Court held a jury trial on Plaintiff Brandy A. Read's ("Read") claims against defendant Oklahoma Flintrock Products, LLP ("Flintrock") on January 23 and 24, 2023. The jury returned a verdict in Read's favor on her claim of hostile work environment sex discrimination in violation of Title VII of the Civil Rights Act of 1964. The jury awarded Read $1,440.00 in compensatory damages and $15,000.00 in punitive damages, for a total of $16,440.00. *See* ECF No. 78 (jury verdict); ECF No. 79 (judgment). The jury found in Flintrock's favor on Read's claims of Title VII pre-termination retaliation and Title VII retaliatory termination. ECF No. 78 at 2-3.

II.  **Read's Requested Award, Flintrock's Objections, and Flintrock's Requested Award**

Read seeks a total of $79,401.75 in fees as the "prevailing party" on her Title VII sexual harassment claim. As a breakdown, Read seeks $64,365.00 in fees for attorney Jonathan Shook (183.9 hours of time at $350 per hour, including 8.7 hours spent preparing the reply brief to Defendant's response); $14,883.75 in fees for attorney Kassidy Quinten (85.05 hours of time at $175 per hour); and $153.00 in fees for paralegal Jan Russell (1.7 hours at $90 per hour).

Flintrock does not object to a determination that Read was the "prevailing party" in this action with respect to her sexual harassment claim. *See CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 422 (2016) (explaining that a plaintiff is the "prevailing party" when she "secures an enforceable judgment on the merits") (cleaned up). However, Flintrock objects to Read's requested award and requests the Court enter a substantially reduced fee award. ECF No. 179. Flintrock bases its request for a substantial reduction of Read's requested award on four grounds: (1) the hourly rate for associate attorney Kassidy Quinten is unreasonably high, because much of the work she performed could have been done by a paralegal; (2) certain of Plaintiff's requested expenses should be reduced based on excessiveness or unreasonableness; (3) in her initial disclosures filed in November 2021, Read estimated a lower amount of expected attorney fees than she is now requesting; and (4) Read achieved only limited success, warranting a significant percentage reduction of the lodestar calculation.

Flintrock also requests it receive a fee award as the "prevailing party" on Read's retaliation claims. Flintrock argues those claims were unreasonable, and Read continued to pursue them after they clearly became unreasonable. Read objects to payment of any fees to Flintrock for prevailing on those claims.

III.  **Read's Attorney Fees – Lodestar Calculation**

In a Title VII case, the district court "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. § 2000e-5(k). "The most useful starting point for

2

determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This calculation of the "lodestar figure" typically yields a presumptively reasonable attorney's fee, though the "presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010).

With respect to a reasonable rate, courts must "determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1256 (10th Cir. 1998) (cleaned up). In making these determinations, the court may refer to "affidavits submitted by the parties and other reliable evidence of local market rates for civil rights litigation at the time fees are awarded." *Id.* A plaintiff "must provide evidence of the prevailing market rate for similar services by lawyers of reasonably comparable skill, experience, and reputation in the relevant community." *Lippoldt v. Cole*, 468 F.3d 1204, 1224 (10th Cir. 2006) (quotations omitted). If the court does not have adequate evidence of prevailing market rates, the court may also "use other relevant factors, including its own knowledge, to establish the rate." *Case*, 157 F.3d at 1257.

With respect to hours reasonably expended, the movant bears the burden of proving "the reasonableness of each dollar, each hour, above zero." *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995) (cleaned up). Courts must exclude from the calculation any hours that are "excessive, redundant, or otherwise unnecessary." *Hensley,* 461 U.S. at 434. "Time records submitted in support of a fee request must reflect the same billing judgment as a bill to a paying client." *Bishop v. Smith*, 112 F. Supp. 3d 1231, 1239 (N.D. Okla. 2015); *see also Hensley*, 461 U.S. at 434 ("Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.") (cleaned up).

### A. Hourly Rates

Flintrock does not object to the hourly rate for lead attorney Jonathan Shook ($350 per hour) or for paralegal Jan Russell ($90 per hour). Flintrock contends, however, that the hourly rate for associate attorney Kassidy Quinten ($175) is unreasonable, because Ms. Quinten was not an attorney of record in the case and much of the work she performed could have been performed by a paralegal. Flintrock does not propose any particular reduced rate. Flintrock also does not specify which tasks performed by Ms. Quinten could have been performed by a paralegal.

Read has presented substantial evidence that Ms. Quinten's requested hourly rate is reasonable and in line with the prevailing market rates for lawyers of comparable skill and experience practicing in the Tulsa area. According to Mr. Shook's affidavit, Ms. Quinten was admitted to the Oklahoma bar in 2019 and has practiced law at Mr. Shook's firm as an associate attorney since that time. ECF No. 82-1 at ¶ 8. Ms. Quinten's requested rate is in the middle range of the 2016 Tulsa Rate Survey for attorneys with 0-3 years of experience. *See* ECF No. 82-1 at Ex. A (showing rates ranging from $115-$240 per hour for attorneys with 0-3 years of experience, with a median around $170-175 per hour). The Court finds that Kassidy Quinten's requested $175 rate, which is at the middle of the prevailing market scale, is reasonable based on her experience.

Further, Flintrock does not identify any specific tasks that Ms. Quinten inappropriately performed, rather than having a paralegal perform the task. The Court does not identify any such tasks in the itemized billing statement (ECF No. 82-1) and finds no basis for reducing Ms. Quinten's rates for any particular tasks.

### B. Hours Expended

Flintrock objects to the reasonableness of hours expended by Read's counsel on various tasks, which Flintrock categorizes as (1) unnecessary or unreasonable tasks for the results obtained; and (2) excessive or double time billed. ECF No. 85-5. In her reply, Read disputes that any billed time was unreasonable, unnecessary, or excessive. ECF No. 89 at 7-8.

The reasonableness inquiry is governed by whether counsel "exercise[d] 'billing judgment' with respect to hours worked," making a "good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. The Court considers "whether the attorney's hours were necessary under the circumstances" and "approaches this reasonableness inquiry much as a senior partner in a private law firm would review the reports of subordinate attorneys when billing clients." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (cleaned up).

Flintrock's objections based on the unnecessary or unreasonable nature of the task are unfounded. Flintrock cites to no authority indicating that counsel should not be permitted to recover time incurred on matters that were not strictly necessary to the outcome of the litigation. For example, Flintrock objects to tasks related to Flintrock's opposed motion to extend the dispositive motion deadline, which the Court granted after a hearing. Flintrock appears to object to Read's counsel's billing time on these tasks, because Flintrock ultimately obtained the extension. The Court is unaware of any authority suggesting that a prevailing party cannot recover time incurred on motion practice where that party did not prevail on the particular motion. The Court has reviewed each of the challenged time entries and does not find any tasks to be unnecessary or unreasonable in the course of litigation.

Flintrock's objection based on excessive time is also overruled. The Court has reviewed each of the challenged time entries and does not find any time entries to show excessive time billed on any task.

As to double billing, Flintrock challenges one entry in which it appears that both Jonathan Shook and Kassidy Quinten billed 0.1 hours for a telephone call with witness Ashley Phipps regarding deposition scheduling on August 15, 2022. The Court agrees with Flintrock that this is not a two-lawyer task and reduces Mr. Shook's time by 0.1 ($35.00). Flintrock also challenges an apparent duplicate billing of 0.1 hours by Ms. Quinten for emailing Read regarding the date of a

5

rescheduled settlement conference on January 3, 2022.  The Court agrees that this charge appears to be a duplicate bill for the same task and reduces Ms. Quinten's time by 0.1 ($17.50).

        C.      **Read's Estimated Attorney Fees**

Flintrock objects generally to Read's requested attorney fee on the ground that Read estimated in November 2021 that her attorney fees through trial would be $60,000.  *See* ECF No. 85-1 at 5 (Plaintiff's Rule 26 Initial Disclosures) ("Plaintiff is entitled to recover reasonable attorney fees, costs, and other expenses relating to the prosecution of this litigation.  At this time, her best estimate of such damages through trial is $60,000.").  Flintrock argues the estimated amount is 27% less than the presently requested fees, "yet nothing in the itemized billing was unexpected in this type of litigation."  ECF No. 85 at 6.

Flintrock cites to no authority suggesting that an attorney must account for any increase in fees over the amount estimated at the time of initial disclosures.  At the outset of a case, an attorney must necessarily speculate to anticipate fees through trial in a Title VII case.  The Court will not hold counsel to its estimate of fees made early in the case, and it is not *per se* unreasonable that counsel's actual fees are approximately $20,000 higher than expected.

Based on these conclusions regarding reasonable rates and hours, the Court's lodestar calculation is $79,349.25, which reflects a $52.50 total reduction in Plaintiff's requested lodestar amount.

**IV.**      **"Degree of Success" Reduction to the Lodestar**

At trial, Read lost both of her Title VII retaliation claims (pre-termination retaliation and retaliatory termination).  On her successful Title VII hostile work environment sex discrimination claim, she obtained $1,440 in compensatory damages and $15,000 in punitive damages.  Flintrock argues a reduction is warranted, because Plaintiff prevailed on only one of her three claims and obtained only a small portion of the $100,000 amount demanded in initial disclosures.  To account for Read's limited success, Flintrock requests a reduction of $72,174.40 from the original fee

request of $76,356.75, which would result in a total fee award of $4,184.35. ECF No. 85 at 8. Plaintiff responds that her claims were related, and that she achieved an "excellent result" on her sexual harassment claim, particularly considering Read was sexually harassed for only a brief time (about one month) and did not undergo health care treatment or counseling.

When the prevailing party succeeds on only some of her claims, determination of a reasonable fee award requires the court to consider two additional questions: "(1) whether the plaintiff's successful and unsuccessful claims were related; and (2) whether the plaintiff's overall level of success justifies a fee award based on the hours expended by plaintiff's counsel." *Flitton v. Primary Residential Mortg., Inc.*, 614 F.3d 1173, 1176-77 (10th Cir. 2010) (citation omitted).

### A.   Relatedness of Successful and Unsuccessful Claims

In some civil rights cases, "a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories." *Hensley*, 461 U.S. at 434. In such a suit, an attorney's "work on one claim will be unrelated to his work on another claim" and "must be treated as if they had been raised in two separate lawsuits." *Id.* at 435 (explaining that "congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits"). The Supreme Court explained:

> It may well be that cases involving such unrelated claims are unlikely to arise with great frequency. Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Id.* In the fee award context, the Tenth Circuit "has held that claims are related if they are based on a common core of facts or are based on related legal theories." *Flitton*, 614 F.3d at 1177 (citation omitted).

Flintrock argues that Read's unsuccessful retaliation claims were based on "entirely separate evidence" from the evidence regarding sexual harassment. ECF No. 85 at 7. The Court rejects this argument. All three claims against Flintrock, whether successful or unsuccessful, were based on a common core of facts. Read's successful Title VII sexual harassment claim, and her unsuccessful Title VII retaliation claims, were clearly interrelated and stemmed from the sexual harassment that Read experienced from her supervisor, Harry Singh. All of Read's Title VII claims flowed from a single narrative that began with Mr. Singh's harassment, continued with Flintrock's decision to transfer Read to another role at Flintrock, and concluded with Flintrock's termination of her employment on the same date Flintrock discovered Read was communicating with attorneys about Mr. Singh's harassment.

Read testified that the retaliatory treatment she experienced directly resulted from her complaint about Mr. Singh's harassment. Specifically, Read testified she was moved to a sales role at Flintrock following her complaint about Mr. Singh. She testified Mr. Singh then yelled at her and insulted her during meetings. She also testified was terminated on the same day she was interrogated about hiring a lawyer, and she was falsely accused of, and terminated for, stealing company documents. Consequently, all three claims were related. This is not a case where Read's unsuccessful claims against Flintrock were "distinct in all respects from [her] successful claims," such that hours spent on any unsuccessful claims should be severed and treated as if they arose in a separate lawsuit. *See Hensley*, 461 U.S. at 435.

### B.     Overall Level of Success

Where the successful and unsuccessful claims are related, a court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435. If a plaintiff "has obtained excellent results, his attorney should recover a fully compensatory fee," which normally "will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an

8

enhanced award may be justified." *Id.*[1] "In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.*

Conversely, if a plaintiff "has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436. "This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith," because "Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill." *Id.* In every case, "the most critical factor is the degree of success obtained." *Id.* As explained by the Tenth Circuit, *Hensley* requires a court to "make a qualitative assessment to determine what less-than-perfect results are 'excellent,' justifying full recovery, or to what extent plaintiffs' 'limited success' should effect a reduction in the lodestar." *Bangerter*, 61 F.3d at 1511.

"There is no precise rule or formula" for determining an appropriate reduction to a lodestar amount based on limited success. *Hensley*, 461 U.S. at 436. "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436-37. However, a court may abuse its discretion by utilizing a "mathematical approach" premised solely on a ratio of won to lost claims. *See Bangerter*, 61 F.3d at 1511 (reversing district court's reduction of lodestar by 75% where court had "merely listed successful and unsuccessful claims" rather than "demonstrating that it qualitatively considered the relationship between the amount of the fee award and the results").

The Court finds that Read failed to achieve an overall "excellent" result, and that a percentage reduction for limited success is warranted based on Read's failure to succeed on the

---

[1] Read does not request any enhancement of the lodestar in this case.

9

retaliation claims. A limited reduction is warranted to account for some pretrial and trial time spent on the unsuccessful retaliation issues. The Court finds a 25% reduction of the overall lodestar amount is appropriate, which reduces the award to $59,511.94. This selected percentage is not a "mathematical approach" based on successful versus unsuccessful claims. Instead, it reflects an approximation of the limited extent to which Read's lack of success on her retaliation claims should effect an overall reduction in the lodestar amount. *See, e.g., Busby v. City of Tulsa*, No. No. 11-CV-447-JED-JFJ, 2019 WL 169686, at *3 (N.D. Okla. Jan. 11, 2019) (accepting magistrate judge's recommendation for 10% reduction in attorney fees to account for unsuccessful claims lost at summary judgment). A total award of $59,511.94 reflects Read's success on the sexual harassment claim, including a significant punitive damages award in relation to the compensatory damages award. The majority of hours expended would have been spent by Read's counsel prosecuting this successful claim, regardless of the unsuccessful retaliation claims. However, the total reward also reflects that Read did not succeed on a critical aspect of her case – namely, that she was retaliated against for reporting the harassment, which likely would have increased her compensatory damages. In sum, this fee award fairly compensates Read's counsel for time spent but recognizes that Read did not achieve an "excellent result" considering all claims originally asserted.

Although the reduced fee award of $59,511.94 substantially exceeds the $16,440.00 jury award, this does not mandate any greater reduction of the lodestar. *See Brandau v. State of Kan.*, 168 F.3d 1179, 1181 n.1, 1183 (10th Cir. 1999) (upholding attorney fee award of $40,398.75 where plaintiff received $1.00 on her sexual harassment claim and lost on her retaliation and constructive discharge claims). Flintrock characterizes Read's award as a "nominal" result when considering the amount of time spent on the case. However, Read received compensatory and punitive damages awards on her successful claim, and the jury elected to send Flintrock a message regarding its internal practices, even though it found Read suffered only $1,440 in damages

10

flowing from Mr. Singh's harassment. Further, Flintrock fought this case persistently, all the way to trial. A party "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 581 n.11 (1986) (quotations omitted). The total fee awarded, although greater than the relief obtained, is neither excessive nor unreasonable in light of the time expended and results obtained in this litigation.

The Court rejects Flintrock's other two arguments in support of a reduction. First, Flintrock suggests a fee reduction is appropriate based on Plaintiff's requested award of $100,000 in her November 2021 Initial Disclosures. *See* ECF No. 85-1 at 5 ("At this time, Plaintiff anticipates asking a jury to award her $100,000 in compensatory and punitive damages" on all claims). According to Flintrock, Read recovered only 16.44% of her requested award. Therefore, the requested attorney fee award should be reduced correspondingly, to $12,553.05 (excluding the requested fees for preparing a reply brief to Defendant's response). Flintrock further requests a reduction of that amount by two-thirds, to $4,184.35, to account for Read's success on only one of her three claims. Flintrock's proposal evinces the kind of "mechanical" approach to assessing the plaintiff's degree of overall success that the Tenth Circuit has rejected. *See Flitton*, 614 F.3d at 1178. Further, Read did not request $100,000 in damages at trial. At trial, Read did not specify any damages amount, compensatory or punitive, related to the successful sexual harassment claim. It would be inappropriate to compare Read's preliminary damages estimate for all claims to the amount awarded on one claim after trial.

Second, Flintrock contends its $2,500 offer of judgment, made approximately three weeks before trial, should be the basis for comparison against Read's award of $1,440 in compensatory damages. *See* ECF No. 85-2 (Flintrock's Rule 68 Offer of Judgment dated Dec. 31, 2022). The Court also rejects this request for reduction based on the offer of judgment. Read received a higher

11

result than Flintrock's offer of judgment when the punitive damage award is taken into account. The Court finds no basis for reducing the fee award using this approach.

V.     **Flintrock's Counter-Motion for Attorney Fees**

Flintrock seeks $54,158.50 in attorney fees as the prevailing party on Read's retaliation claims.[2] When a defendant is the prevailing party on a civil rights claim, the defendant may be awarded attorney's fees "if the plaintiff's 'claim was frivolous, unreasonable, or groundless,' or if 'the plaintiff continued to litigate after it clearly became so.'" *CRST Van Expedited*, 578 U.S. at 422-23 (quoting *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 422 (1978)). Unlike an award to a prevailing plaintiff, this standard applicable to a prevailing defendant "is a difficult standard to meet, to the point that rarely will a case be sufficiently frivolous to justify imposing attorney fees on the plaintiff." *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1203 (10th Cir. 2000). "The fact that a plaintiff may ultimately lose his case is not itself a sufficient justification for the assessment of fees" in the defendant's favor. *Houston v. Norton*, 215 F.3d 1172, 1174 (10th Cir. 2000) (quoting *Christiansburg Garment Co.*, 434 U.S. at 414-15). It is important for the district court to "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg Garment Co.*, 434 U.S. at 421-22.

Flintrock argues that Read's pursuit of the retaliation claims was unreasonable, because Flintrock "provided overwhelming evidence in the initial disclosures as to the poor performance of the Plaintiff being the sole grounds for her position change and termination." ECF No. 85 at 6. Flintrock points to evidence it produced to counter the retaliation claims, including "multiple

---

[2] The attached breakdown of fees does not add up to this amount. *See* ECF No. 85-4. The Court's calculation of hours for both attorney Chase McBride and paralegal Julie Enlow results in a total of $49,158.50 (176.9 hours of time for Mr. McBride at $275 per hour, and 7.3 hours of time for Ms. Enlow at $70 per hour). It appears Flintrock's total includes a $5,000.00 retainer "to be placed in Trust Account for January Jury Trial." ECF No. 85-4 at 1. This amount is not itemized or explained, and the Court excludes it from consideration.

statements from other employees regarding being late and missing work, photos of the Plaintiff sleeping, cell phone use, and confidential documents being located in the Plaintiff's purse." *Id.* Flintrock contends that, despite this evidence, Read unreasonably continued to pursue her retaliation claims and made unreasonable damage requests.

Read objects to payment of any fee award. Read argues that Flintrock has completely failed to demonstrate that her unsuccessful retaliation claims were unreasonable or that Read continued to litigate those claims after it clearly became so. Read points out that her retaliation claims survived both Flintrock's motion for summary judgment and its Rule 50 motion for judgment as a matter of law.

The Court denies Flintrock's request for payment of its attorney fees. Read's pursuit of her retaliation claims was certainly not unreasonable, frivolous, or groundless. Even though Read did not prevail on the retaliation claims, the record was not devoid of evidence of retaliation. Specifically, there was evidence presented at trial that Read's transfer to a sales role, poor treatment by Mr. Singh after that transfer, and termination from employment were all retaliatory and in response to Read's complaint of sexual harassment against Mr. Singh. There was evidence that the stated reason for Read's firing, that she had stolen company documents, was pretextual, and that other issues and statements regarding Read's work performance were generated after Read's termination. Read testified at trial that she was fired on the same date Flintrock senior management interrogated her about hiring a lawyer related to her sexual harassment complaint, and that she had previously been encouraged to take company documents home to study them.

Read's retaliation claims, though ultimately unsuccessful, were based on legitimate factual and legal bases on which Read reasonably relied. The Court denied Flintrock's motion for summary judgment on Read's retaliatory termination claim,[3] and Read's retaliation claims

---

[3] Flintrock did not seek summary judgment on pre-termination retaliation.

13

survived a Rule 50(a) motion for judgment as a matter of law at trial. Flintrock is not entitled to attorney fees based on the unreasonableness of Read's retaliation claims.[4]

VI.   **Conclusion**

Plaintiff's Motion for Award of Attorney Fees (ECF No. 82) is **GRANTED IN PART**, and Plaintiff is awarded $59,511.94 as a reasonable attorney's fee. Defendant's Counter-Motion for Attorney Fees (ECF No. 91) is **DENIED**.

**SO ORDERED** this 17th day of May, 2023.

*[signature]*
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**

---

[4] Flintrock's perfunctory request for an "offset" credit of fees is also denied.